GIDDINGS v CITY OF DETROIT

Docket No. 95571. Submitted April 12, 1989, at Detroit. Decided August 7, 1989.

Anna Marie Giddings was sexually assaulted while working as a volunteer teaching assistant at a Detroit high school. Giddings brought a tort action in Wayne Circuit Court against the City of Detroit; the Detroit Board of Education; Arthur Jefferson, superintendent; Robert Boyce, school principal; Ben Crane, head of security at the school; and Beverly Gray and Hiram McKee, security guards at the school. All defendants except the City of Detroit filed a motion for summary disposition, which the trial court, William L. Cahalan, J., granted in part and denied in part. In ruling on the motion, the trial court determined that (1) plaintiff pled sufficient facts in support of a claim for intentional nuisance, (2) the board of education may be held vicariously liable for the alleged tortious acts of its employees, (3) decisions relating to the hiring of security personnel, the establishment of security procedures and the selection of security equipment were discretionary, thereby entitling the individuals responsible for those decisions to governmental immunity, (4) decisions relating to the instruction, training, supervision and control of security guards were ministerial and not protected by governmental immunity, (5) decisions regarding the observance of security procedures were ministerial and not protected by governmental immunity, and (6) the security guards are not entitled to governmental immunity as they were performing a ministerial function. All defendants except the City of Detroit sought and were granted leave to appeal to the Court of Appeals.

The Court of Appeals held:

1. There is no intentional nuisance exception to the doctrine of governmental immunity.

2. Superintendent Jefferson, as the highest executive official

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 42, 45, 111 et seq., 263 et seq., 294, 434 et seq.

See the Index to Annotations under Governmental Immunity and Privilege; Rape; Schools and Education.

of the Detroit public school system, is not entitled to absolute immunity as his position does not involve the type of broad, essential decision-making as do those of high ranking officials who are generally accorded absolute immunity.

3. Actions and decisions taken by Superintendent Jefferson, school principal Boyce, and head of security Crane with respect to the selection of security personnel, the training and supervision of security personnel, and the selection of security procedures and equipment are entitled to governmental immunity as these actions were discretionary-decisional.

4. Security guards Gray and McKee are not entitled to governmental immunity as their functions were ministerial and did not entail discretionary decision-making.

5. The observance or nonobservance of security procedures by defendants in this case involved a ministerial function for which they may not claim governmental immunity.

6. The board of education may not be held vicariously liable for any alleged tort committed by the security guards as the guards were discharging a governmental function at the time of their alleged tortious conduct.

Affirmed in part and reversed in part.

1. Gᴏᴠᴇʀɴᴍᴇɴᴛᴀʟ Iᴍᴍᴜɴɪᴛʏ — Iɴᴛᴇɴᴛɪᴏɴᴀʟ Nᴜɪsᴀɴᴄᴇ.
There is no intentional nuisance exception to the doctrine of governmental immunity from tort liability.

2. Gᴏᴠᴇʀɴᴍᴇɴᴛᴀʟ Iᴍᴍᴜɴɪᴛʏ — Sᴄʜᴏᴏʟ Dɪsᴛʀɪᴄᴛ Sᴜᴘᴇʀɪɴᴛᴇɴᴅᴇɴᴛs — Aʙsᴏʟᴜᴛᴇ Iᴍᴍᴜɴɪᴛʏ.
A school district superintendent may not claim absolute immunity from tort liability as such immunity is accorded the highest executive official of a governmental unit only where such official is engaged in broad, essential governmental decision-making.

3. Gᴏᴠᴇʀɴᴍᴇɴᴛᴀʟ Iᴍᴍᴜɴɪᴛʏ — Lɪᴍɪᴛᴇᴅ Iɴᴅɪᴠɪᴅᴜᴀʟ Iᴍᴍᴜɴɪᴛʏ.
Government employees who are not absolutely immune from tort liability enjoy limited immunity which applies when they are (1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority, (2) acting in good faith, and (3) performing discretionary, as opposed to ministerial acts.

4. Gᴏᴠᴇʀɴᴍᴇɴᴛᴀʟ Iᴍᴍᴜɴɪᴛʏ — Vɪᴄᴀʀɪᴏᴜs Lɪᴀʙɪʟɪᴛʏ.
A governmental agency may not be held vicariously liable under the doctrine of respondeat superior for a tort committed by its employee if the activity in which the employee was engaged at

the time the tort was committed constituted the exercise or discharge of a governmental function which does not fit within one of the statutory exceptions to governmental immunity.

5. GOVERNMENTAL IMMUNITY — PUBLIC BUILDINGS.

The public building exception to governmental immunity from tort liability only applies where an injury is occasioned by a physical defect or dangerous condition of a building itself; the exception does not apply where an injury is the result of an assault within a public building.

*Meklir, Schreier, Nolish & Friedman, P.C.* (by *Mark E. Weiss*), for plaintiff.

*Patterson, Phifer & Phillips, P.C.* (by *Trisha J. Arndt* and *Nancy M. Rade*), for defendants Detroit Board of Education, Arthur Jefferson, Robert Boyce, Ben Crane, Robert Marshall, Eleazar Shepherd, Beverly Gray and Hiram McKee.

Before: MACKENZIE, P.J., and HOOD and BRENNAN, JJ.

HOOD, J. Defendants Detroit Board of Education, Arthur Jefferson, Robert Boyce, Ben Crane, Robert Marshall, Eleazar Shepherd, Beverly Gray and Hiram McKee appeal by leave granted from an opinion and order of the Wayne Circuit Court granting partial summary disposition under MCR 2.116(C)(8) and (C)(7) on issues related to governmental immunity. Plaintiff brought this action to recover for injuries suffered on May 13, 1983, when she was attacked and raped at a Detroit high school while a volunteer teaching assistant there. Plaintiff basically alleged that the school building was unsafe and that the individual defendants had failed to make adequate security provisions, including inadequacies in the hiring, training and supervising of the school security guards.

The motion for summary disposition was brought by the Detroit Board of Education and the

individual defendants Jefferson (superintendent), Boyce (school principal), Crane (head of security at the school), and the security guards Gray and McKee.

The circuit court granted summary disposition on the following issues:

1. The public building exception does not apply.

2. The decision to hire security personnel was discretionary and therefore immune from liability.

3. Decisions establishing security procedures and equipment requirements were discretionary and therefore immune from liability.

The following issues were decided in favor of plaintiff and survived the motion:

1. Sufficient facts were pled on a theory of intentional nuisance to avoid governmental immunity.

2. Decisions to instruct, train, supervise and control the guards were ministerial and not protected by governmental immunity.

3. The guards basically followed directions and therefore their actions were ministerial.

4. Decisions regarding the following of security procedures were ministerial.

5. The board could be vicariously liable.

Defendants' challenges basically require consideration of three issues: (1) the intentional nuisance claim; (2) the determination of which acts were discretionary and which were ministerial; and (3) the availability of vicarious liability.

I

We begin with a review of the intentional nuisance claim.

The governmental tort liability act provides that governmental agencies shall be immune from tort

liability in all cases where they are exercising or discharging a governmental function. MCL 691.1407; MSA 3.996(107). That same section further provides that any modifications or restrictions to immunity that existed prior to July 1, 1965, will continue to be recognized. Under this section, defendant board would be immune in this suit unless a prior exception to immunity can be found.

Our Supreme Court in *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139; 422 NW2d 205 (1988), recognized that there is a nuisance exception to immunity. However, the variety of opinions in that case have left open which specific claims are included in that "nuisance exception." At the very least, it appears to recognize an exception for trespass-nuisance and nuisance per se. See *Garcia v Jackson (On Remand),* 174 Mich App 373, 378-379; 435 NW2d 796 (1989) (MACKENZIE, J., dissenting).

That there is a lack of specific guidance in *Hadfield* as to the existence of an intentional nuisance exception is demonstrated by the conflicting opinions that have resulted from this Court. Compare *Garcia, supra,* pp 374-376, in which the majority opinion held that a claim of intentional nuisance is not banned by governmental immunity, and the opposite opinion reached in *Scott v Dep't of Natural Resources,* 169 Mich App 205; 425 NW2d 518 (1988).

In the lead opinion in *Hadfield,* Justice BRICKLEY noted that there was no pre-1964 case law recognizing an intentional nuisance exception. *Hadfield, supra,* p 170. Those pre-*Hadfield* cases which recognized an intentional tort exception appear to have done so after having analyzed *Rosario v Lansing,* 403 Mich 124; 268 NW2d 230 (1978), and *Gerzeski v Dep't of State Highways,* 403 Mich 149; 268 NW2d 525 (1978), two Supreme Court cases in

which no clear majority view emerged. See, e.g., *Ford v Detroit*, 91 Mich App 333; 283 NW2d 739 (1979). Justice BRICKLEY notes however that neither *Rosario* nor *Gerzeski* represent pre-1964 case law. As such, they are not necessarily included as recognized exceptions under MCL 691.1407; MSA 3.996(107). We are not aware of any other opinion which has addressed this issue or which has cited pre-1964 authority for the viability of the intentional nuisance exception. In the absence of relevant precedent or a statement from our Supreme Court specifically recognizing the exception, we are constrained to find there is no exception to immunity under the statute where, as here, the claim is for intentional nuisance. See *Scott, supra; Garcia, supra,* (MACKENZIE, J., dissenting).

This finding is consistent with the general rule that there is no intentional tort exception to governmental immunity as long as the alleged torts were committed in the performance of a governmental function. See *Smith v Dep't of Public Health*, 428 Mich 540, 544; 410 NW2d 749 (1987); *Eichhorn v Lamphere School Dist*, 166 Mich App 527, 547; 421 NW2d 230 (1988).

Furthermore, on the facts of this case, it is not clear that plaintiff pled sufficient facts to sustain an intentional nuisance claim. In order to establish an intentional nuisance claim against a governmental agency, a plaintiff must show both that there is a condition which is a nuisance and that the agency intended to create that condition. *Guilbault v Dep't of Mental Health*, 160 Mich App 781, 788; 408 NW2d 558 (1987).

We are aware that there is a conflict in this Court on the standard necessary to establish intent. While the Supreme Court has noted the conflict, it has not addressed the issue. See *Hadfield, supra,* p 172, n 14. The first standard, noted

above, requires that the defendant must have intended to bring about the condition alleged to be a nuisance. The second requires that the defendant who created or continued the nuisance knew or must have known that harm to the plaintiff was substantially certain to follow as a result of the defendant's actions. *Ford, supra,* p 336. This standard has been described as the more difficult to meet. See *Scameheorn v Bucks,* 167 Mich App 302, 314; 421 NW2d 918 (1988) (concurring opinion of SAWYER, J.). No matter which standard is applied, however, the complaint does not indicate that defendants acted intentionally. While we agree that the complaint used all the appropriate terms to plead an intentional tort, we cannot agree that the facts actually pled are a sufficient basis on which to sustain a claim for purposes of this motion.

While plaintiff alleges knowledge on the part of defendants—that they knew or should have known that a dangerous condition existed in the school—outside of conclusory statements, the complaint does not indicate that defendants acted so as to create danger and inflict injury or with knowledge that harm was substantially certain to follow. It thus fails under the more stringent *Ford* standard. Moreover, the complaint does not indicate that defendants intended to create an unsafe building. Therefore, summary disposition should have been granted in favor of defendants on plaintiff's intentional nuisance claim.

II

We agree with the trial court that Superintendent Jefferson is not absolutely immune from liability. The fact that he is the highest ranking official of his governmental unit does not mean

that he is involved in the type of broad, essential governmental decision-making that is protected by absolute immunity. See *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 632-633; 363 NW2d 641 (1984).

We agree with the Court in *Kirschner v Carney-Nadeau Public Schools*, 174 Mich 642, 645-646; 436 NW2d 416 (1989), that a superintendent of schools is not entitled to absolute immunity.

However, government employees not absolutely immune from tort liability may still be protected from liability when they are:

> (1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;
> (2) acting in good faith; and
> (3) performing discretionary, as opposed to ministerial acts. [*Ross, supra, pp 633-634.*]

The only element which was disputed below was whether the individuals' activities were discretionary or ministerial.

An employee performs a protected "discretionary-decisional" act when the act requires personal deliberation, decision and judgment. This includes significant decision-making on whether to engage in a particular activity and how best to carry it out. A "ministerial-operational" act is one that may include minor decision-making, but that is basically the execution of a decision where the individual has little or no choice. *Ross, supra, pp* 634-635.

Decisions regarding the setting of policy or the failure to do so have been found to be discretionary, including decisions regarding the establishment of safety procedures and equipment standards. *Ross, supra,* p 651; *Kirschner, supra,* p 647.

In school situations, the hiring, training, instructing, supervision and monitoring of personnel have been found to be types of decisions that would be described as discretionary-decisional. See *Ross, supra,* p 640; *Eichhorn, supra,* p 541; *Willoughby v Lehrbass,* 150 Mich App 319, 348; 388 NW2d 688 (1986).

The claims against Superintendent Jefferson, as well as those against the principal, Boyce, and the head of security, Crane, appear to concern the selection and screening of security personnel, decisions regarding their subsequent supervision and training, and the provision of security equipment and procedures.

In some situations, instruction and supervision have been found to be ministerial-operational activities. However, those cases involved adults supervising the activities of children. See *Ross, supra,* pp 640, 651. In those instances, the Court found that the direct supervision or oversight of minors at a swimming outing and in a building trades class merely involved the execution of other discretionary decisions regarding the care of the students. Here, plaintiff's claim regarding supervision and instruction goes to the decision to provide those activities and would be a discretionary-decisional activity and therefore immunity would apply.

In the context of this case, all the above actions require the deliberation, decision-making and judgment of the defendants. As such, they are discretionary-decisional acts and immunity is available.

As to the security personnel, Gray and McKee, the complaint does not allege and there is no indication that these individuals were in supervisory or decision-making roles similar to the other defendants. The relevant claims against them appear to be that they failed to follow or implement

security procedures. Although the task of patrolling the school may involve some decision-making, the essence of their tasks appears to have been the execution of decisions and to have involved only minor decision-making. Accordingly, the activities of these defendants appear to have been ministerial and not immune from tort liability. *Ross, supra,* p 635.

Defendants' reliance upon *Zavala v Zinser,* one of the cases decided with *Ross,* is misplaced in that the activities of the police officers in that case involved discretionary decisions made in the context of a potentially dangerous altercation. See *Ross, supra,* p 659. Such discretionary activity does not appear to be present in the instant case. On the basis of the record before us, it does not appear that individual immunity is available to the defendants Gray and McKee.

The only remaining claim concerns the following of security procedures, which would be ministerial acts. We agree with the trial court that these would not be immune from liability.

### III

As to the vicarious liability claim, in general, we agree that the board of education can be vicariously liable. *Ross* made it clear that respondeat superior liability can be imposed under specific conditions. See discussion in *Ross, supra,* pp 624-625. With these guidelines, of the claims that are currently before this Court, the only remaining claim is the one against the individual security guards. We believe the parties would agree that these employees were acting during the course of their employment and within the scope of their duty in patrolling the school. However, this determination does not make the agency automatically

liable. The activity the officers were involved in must also be nongovernmental or fall within a statutory exception for the agency to be vicariously liable. *Id.,* p 625. In making this determination, we look at the general activity the defendants were involved in rather than the alleged tortious act. See *Ross, supra,* p 625; *Smith, supra,* pp 606-610. Here, it was patrolling the school, an activity which would appear to come under the board's responsibilities to provide for the safety of pupils in the schools. MCL 380.1300; MSA 15.41300. Therefore, under the *Ross* guidelines, we cannot say that a basis for vicarious liability exists in this case.

## IV

We note that plaintiff challenges the trial court's finding with regard to the public building exception. This issue was not raised in a cross appeal nor in the application for leave to appeal and therefore is not properly before this Court. MCR 7.205(D)(4); *Hadfield, supra,* p 200. However, it appears that the assault was the result of an intervening party rather than a dangerous or defective condition of the building itself and the building exception would be inapplicable. *Reardon v Dep't of Mental Health,* 430 Mich 398, 417; 424 NW2d 248 (1988).

As to plaintiff's argument that the complaint was sufficient to establish a nuisance per se, that issue was not addressed by the trial court and will not be considered here. For the same reason, defendants' argument on private/public duty is not considered.

In summary, we affirm those portions of the trial court's opinion regarding the public building exception, the absence of immunity for the actions

of the guards in carrying out their duties and those actions involved in carrying out security procedures. We also agree that the decisions regarding the hiring of personnel and the establishment of security procedures and equipment requirements were discretionary and therefore immune from liability.

However, on the facts of this case, we reverse the findings that the board could be vicariously liable, that the decisions regarding the instruction and supervision of the guards were ministerial and that the intentional nuisance claim survives the motion.

The sole remaining issues, therefore, that survived the motion for summary disposition concern the activities of the guards and any activities related to the following of security procedures.

Affirmed in part and reversed in part.