TAYLOR v CITY OF DETROIT

Docket No. 111259. Submitted August 6, 1989, at Detroit. Decided
    November 14, 1989.

   Ethan Duran Taylor, a ten-year-old, was electrocuted inside an
   electrical substation maintained by the Detroit Public Lighting
   Department and located in an abandoned section of a housing
   project owned by the City of Detroit. The decedent, who had
   lived in the housing project along with Elgin Taylor, his father,
   gained entry into the locked substation by climbing through a
   broken window. Elgin Taylor, as personal representative of the
   estate of the decedent, brought a wrongful death action in the
   Wayne Circuit Court against the City of Detroit. By amended
   complaint, plaintiff made additional allegations as to the De-
   troit Public Lighting Department. The trial court, Lucile A.
   Watts, J., denied a motion by plaintiff to amend his complaint
   to add a breach of contract claim and granted summary disposi-
   tion in favor of defendant on the basis of governmental immu-
   nity. Plaintiff appealed.

   The Court of Appeals *held:*

   1. The trial court did not abuse its discretion in denying the
   motion to amend the complaint to add a breach of contract
   claim based on plaintiff's lease with defendant city. Plaintiff
   was aware of the lease when he filed suit, yet he filed his
   motion after already having amended his complaint once before
   and after the case had been mediated.

   2. The trial court did not err in concluding that the public
   lighting department, in providing electricity to the decedent's
   housing project, was engaged in a governmental function, not a
   proprietary function, and that defendant was therefore entitled
   to governmental immunity.

   3. The trial court correctly concluded that the public build-
   ings exception to governmental immunity did not apply in this

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability
    §§ 88, 171-173, 282, 305, 569.
See the Index to Annotations under Attractive Nuisances; Govern-
    mental Immunity or Privilege; Nuisances; Trespass.

case as the substation was not a building open for use by members of the public.

4. Plaintiff's intentional nuisance claim is barred by governmental immunity.

5. Plaintiff failed to make sufficient allegations in support of his claim of nuisance per se.

6. There was not an attractive nuisance under the facts of this case.

7. The statutes authorizing control of public housing projects by municipal housing commissions did not give rise to an additional exception to governmental immunity. The governmental tort liability act, which expressly limits exceptions to governmental immunity to those provided under that act, does not provide for an exception with respect to municipal housing commissions.

Affirmed.

1. PLEADING — AMENDMENT OF PLEADINGS — APPEAL.

Leave to amend a complaint shall be given freely when justice so requires; the Court of Appeals will not reverse a trial court's decision on a motion to amend a complaint absent an abuse of discretion that results in injustice (MCR 2.118[A][2]).

2. GOVERNMENTAL IMMUNITY — PROPRIETARY FUNCTIONS.

A governmental activity, in order to be deemed a proprietary function which is not entitled to governmental immunity from tort liability, must (1) be conducted primarily for the purpose of producing a pecuniary profit, and (2) not normally be supported by taxes or fees.

3. GOVERNMENTAL IMMUNITY — PUBLIC BUILDINGS.

The public buildings exception to governmental immunity from tort liability applies to public buildings open for use by members of the public (MCL 691.1406; MSA 3.996[106]).

4. GOVERNMENTAL IMMUNITY — INTENTIONAL NUISANCE.

There is no intentional nuisance exception to governmental immunity from tort liability.

5. NUISANCE — NUISANCE PER SE.

A nuisance per se is an activity or condition which constitutes a nuisance without regard to the care with which it is conducted or the circumstances under which it exists.

6. NUISANCE — ATTRACTIVE NUISANCE.

An artificial condition upon land is not an attractive nuisance

where it is not in and of itself dangerous but made so only by its use by trespassing children.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Richard D. Cox*), for plaintiff.

*Sullivan, Ward, Bone, Tyler, Fiott & Asher, P.C.* (by *Ronald S. Lederman* and *Frank Wilkerson*), for defendant.

Before: MacKenzie, P.J., and Marilyn Kelly and T. M. Burns,* JJ.

Per Curiam. This is a wrongful death action. Plaintiff appeals as of right from an order denying his motion to amend the complaint and an order granting summary disposition in favor of defendant on the basis of governmental immunity. We affirm.

The facts are not in dispute. Plaintiff's decedent, a ten-year-old boy, was electrocuted when he and several other youths entered an electrical substation located in an abandoned section of a housing project owned by defendant city. Plaintiff and decedent, his son, were residents of the housing project. The substation was a brick structure with a single access door which locked from the outside. Its windows were completely bricked in to the top two feet, where the openings were bricked in latticework fashion. The latticework had apparently been broken out of at least one window. A metal drum was found under this window.

The substation contained cabinets housing electrical switching equipment of the Detroit Department of Public Lighting. Each cabinet had a self-locking door designed to prevent unauthorized entry. On August 7, 1985, plaintiff's decedent en-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

tered the substation, apparently by standing on the metal drum and climbing through the broken latticework at the top of the window. One of the cabinet doors had apparently been left ajar. Decedent opened the door, pulled a wire, and was electrocuted.

In his complaint, plaintiff alleged that defendant city was liable for decedent's death by allowing the substation to be accessible to the public. By first-amended complaint, plaintiff made additional allegations as to the public lighting agency. Plaintiff's subsequent motion to again amend his complaint to add a breach of contract claim was denied. On September 8, 1988, the trial court granted defendant's motion for summary disposition on the basis of governmental immunity.

On appeal, plaintiff first contends that the trial court erred in denying his motion to amend his complaint to add a breach of contract claim. Leave to amend a complaint shall be given freely when justice so requires. MCR 2.118(A)(2), *Muilenberg v The Upjohn Co,* 169 Mich App 636, 645; 426 NW2d 767 (1988), lv den 432 Mich 889 (1989). This Court will not reverse the trial court's decision on a motion to amend absent an abuse of discretion that results in injustice. *Muilenberg, supra,* p 645.

In this case, the proposed breach of contract claim was based on plaintiff's lease with defendant city which provided that defendant would keep the premises in good repair. Plaintiff was aware of this lease at the beginning of the suit. The motion to amend came less than a month before a scheduled final settlement conference and nearly twenty-nine months after the initial complaint was filed. Plaintiff had already amended his complaint once and the case had been mediated. Under these circumstances, we find no abuse of discretion in the trial court's decision to deny plaintiff's motion. Compare

*Vitale v Lentine,* 137 Mich App 249; 358 NW2d 2 (1984). Furthermore, contrary to plaintiff's argument, there was no dramatic change in applicable case law which would mandate that he be allowed a second amendment. *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139; 422 NW2d 205 (1988), did not produce a majority opinion and *Reardon v Dep't of Mental Health,* 430 Mich 398; 424 NW2d 248 (1988), simply resolved a conflict in this Court on the question whether assaults by third parties in a public building fall within the public buildings exception to governmental immunity.

Plaintiff next asserts that the trial court erred in concluding that the public lighting agency was immune from liability because it was engaged in a governmental function. Plaintiff argues that operation of the public lighting agency is conducted primarily for the purpose of producing a profit and thus constitutes a proprietary function, not immune from liability. We disagree.

To be a proprietary function, an activity must (1) be conducted primarily for the purpose of producing a pecuniary profit, and (2) not normally be supported by taxes or fees. *Hyde v Univ of Michigan Bd of Regents,* 426 Mich 223; 393 NW2d 847 (1986). Whether an activity actually produces a profit is not dispositive. *Hyde, supra.* An agency may conduct an activity on a self-sustaining basis without being subject to the proprietary function exception. *Hyde, supra.* If profit is deposited in a general fund or used on unrelated events, the use indicates a pecuniary motive, but use to defray expenses of the activity indicates a nonpecuniary purpose. *Hyde, supra.*

In this case, there is nothing in the record indicating that defendant's primary purpose was to make a pecuniary profit. The public lighting

agency provides electricity only to city-related recipients, such as public housing projects, schools, and the public park of Belle Isle. The city housing commission paid for the electricity supplied by the substation at issue here. Reimbursement for the cost of electricity provided is in the nature of cost defrayment, not profit-making. In short, unlike the cases cited by plaintiff, defendant in this case was *not* involved in a commercial business serving the general population and was not engaged in a pecuniary activity.

Plaintiff next claims that the trial court erred in determining that the public buildings exception to governmental immunity did not apply in this case. We disagree. The public buildings exception, MCL 691.1406; MSA 3.996(106), applies to public buildings "when open for use by members of the public." Here, only authorized personnel were allowed entry into the substation; the structure was neither designed nor intended to be accessible to or used by the general public. We find no error in the court's ruling.

Plaintiff also contends that the trial court erred in ruling that his claims of nuisance per se, intentional nuisance, and attractive nuisance were barred by the governmental tort liability act, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.* Again, we disagree. There is a split in this Court on the question whether, after *Hadfield, supra,* an intentional nuisance exception to governmental immunity still exists. Compare, e.g., *Li v Wong (On Remand),* 170 Mich App 256; 428 NW2d 36 (1988), remanded for reconsideration 430 Mich 882 (1989), with *Scott v Dep't of Natural Resources,* 169 Mich App 205; 425 NW2d 518 (1988). In *Giddings v Detroit,* 178 Mich App 749; 444 NW2d 242 (1989), a panel of this Court recently held that there can be no intentional nuisance exception to the gov-

ernmental tort liability act because there was no pre-1964 case law recognizing such an exception. See 178 Mich App 753-754. We agree with the reasoning of the *Giddings* panel and thus conclude that summary disposition on plaintiff's intentional nuisance claim was proper.

Arguably, under *Hadfield,* there still exists a nuisance per se exception to governmental immunity. See *Giddings, supra,* p 753. The exception does not apply in this case, however. Nuisance per se or at law is defined in Michigan as an activity or condition which constitutes a nuisance without regard to the care with which it is conducted or the circumstances under which it exists. *Hadfield, supra,* p 207 (Opinion of BOYLE, J.), citing *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399; 97 NW2d 90 (1959). Unlike a nuisance in fact, nuisance per se is not predicated on the want of care, but is unreasonable by its very nature. *Hadfield, supra,* p 208. In this case, plaintiff did not allege that the substation was inherently dangerous, but that it was improperly maintained. Such an allegation goes to defendant's want of care and thus falls outside the definition of nuisance per se.

*Hadfield, supra,* did not address the question whether there is an attractive nuisance exception to governmental immunity. We need not decide the question since, even if such an exception exists, there was no attractive nuisance on these facts. The substation was not in and of itself dangerous; it was only the trespassing children's use of the inside of the substation that created the dangerous condition. See *Rand v Knapp Shoe Stores,* 178 Mich App 735; 444 NW2d 156 (1989), and *Murday v Bales Trucking, Inc,* 165 Mich App 747; 419 NW2d 451 (1988), lv den 432 Mich 889 (1989).

Finally, plaintiff maintains that MCL 125.662; MSA 5.3022 and MCL 125.663; MSA 5.3023, authorizing control of public housing projects by municipal housing commissions, create an additional exception to governmental immunity. The claim is wholly without merit. Section 7 of the governmental tort liability act states in part that "[e]xcept as otherwise provided *in this act,* all governmental agencies shall be immune from tort liability . . . ." (Emphasis added.) MCL 691.1407; MSA 3.996(107). MCL 125.662; MSA 5.3022 and MCL 125.663; MSA 5.3023 are part of the housing facilities act, not the governmental tort liability act. Nowhere in the governmental tort liability act has the Legislature created a municipal housing commission exception to immunity. We find no error.

Affirmed.